IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

---

DONALD BACA, CARL BASS,
MARK BULLOCK, TERRY COLWELL,
LAWRENCE COX, HENRY CROCKER,
DARRYL GAINES, TERRY GALLAGHER,
JAMES GRASSIE, GARY GRAVES,
WILL HOGGARD, CARL PADILLA,
NOAH RICO, BRITT SNYDER,
MICHAEL WOOD, KEN ARTHER,
SCOTT CLARK, LUDINE DAVIS, DAN
HARRISON, MICHAEL HERRINGTON,
ANTHONY MOORE, JEANNIE TRUJILLO,
MICHAEL TURNER, JOSE ZEPEDA, and
SHAY SMITH,

                **Plaintiffs,**

v.                                                                                  CIV. No. 97-207 JP/LFG

**COUNTY OF CHAVES,**

                **Defendant.**

## MEMORANDUM OPINION AND ORDER

In a Memorandum Opinion and Order entered May 26, 1998 (Doc. No. 74), I deferred ruling on the portion of defendant's motion for summary judgment dealing with the issue of on-call time compensation until Plaintiffs' cross-motion for summary judgment on Counts I and III was fully briefed and filed. On June 17, 1998, plaintiffs' fully briefed cross-motion and a "Motion to Exceed Page Limitation" (Doc. Nos. 76 and 78) were filed. On June 24, plaintiffs filed a "Motion to Strike Affidavit and Disqualify Witness to Testify as an Expert" (Doc. No. 83), which United States Magistrate Judge Lorenzo Garcia referred to me in an Order entered June 23, 1998. After a thorough review of the law, the facts, and the arguments of counsel, I conclude that: (1) plaintiffs' motion to exceed page limitation should be granted; (2) plaintiffs' motion to

disqualify defendant's expert should be granted; (3) summary judgment should be entered on plaintiff's claim in Count I that defendant violated § 207(k) of the Fair Labor Standards Act; and (4) genuine issues of material fact regarding the on-call compensation issue are in dispute, and, therefore, the cross motions for summary judgment on the on-call compensation issue should be denied.

I.       **Plaintiffs' "Motion to Exceed Page Limitation"**

Plaintiffs request permission to exceed the page limitation of 50 pages for exhibits (set forth in D.N.M. LR-10.5) attached to their cross-motion for summary judgment on Counts I and III.  This action involves twenty-five (25) parties and involves some complex factual and legal issues.  Plaintiffs state that defendant does not oppose this motion to exceed the limit on exhibits. *See Plaintiffs' Motion,* ¶ ¶ 10 & 11.  Therefore, plaintiffs' motion will be granted.

II.      **Plaintiffs' "Motion to Strike Affidavit and Disqualify Witness to Testify as an Expert"**

Plaintiffs argue that the affidavit of Joa Datillo, the defendant's designated expert, should be stricken, and request that she not be permitted to testify because she lacks the experience, training, and education to opine on the issues for which the defendant has offered her testimony.[1]

---

[1] The County argues that plaintiffs' motion should be denied because (1) it was served on the County very shortly before the deadline for filing motion packages, and (2) plaintiffs misrepresented to the court at the May 21, 1998 motion hearing that the motion was complete and would be served in time for a response and reply to be completed within the motion package deadline.  A review of the transcript of the motion hearing reflects that counsel for plaintiffs represented that he "intended to [file the motion to strike] before the motions deadline."  I asked for clarification and counsel for the plaintiffs stated that he would *serve* the motion before the deadline and *briefing* would begin at that time.  Although counsel for plaintiffs did not serve the motion until June 11, 1998, only five days before the motion package filing deadline, he did not make any significant misrepresentations.  Additionally, the County has not been prejudiced because, by direction of Magistrate Judge Garcia, the County responded to plaintiffs' motion.

"Acceptance or rejection of an expert witness's qualifications is a matter within the discretion of the trial court, and its ruling will be disturbed only for clear abuse of discretion." *United State v. Dysart*, 705 F.2d 1247, 1251-52 (10th Cir. 1983) (citations omitted).

Joa Datillo, by way of affidavit and deposition, has testified that she is "the expert witness retained by Defendant, County of Chaves" and that she has "spent copious time reading, reviewing and analyzing the payroll and time records kept by Plaintiffs for the time period in question." *See* Affidavit of Joa Datillo, attached as Exhibit F to "Defendant's Memorandum in Support of Motion for Summary Judgment on Counts I & III." She presents opinions on topics including "pay periods" as defined by the Fair Labor Standards Act, overtime compensation, and call back time totals.[2]

Federal Rule of Evidence 702 states, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." It is extremely difficult to surmise what, if any, specialized knowledge Ms. Datillo would be able to provide to assist the jury.

Ms. Datillo admits in her deposition that she has never been qualified previously to testify as an expert in any court proceeding. *See* Deposition of Joa Datillo taken on April 14, 1998 ("Deposition"), at p. 12. Although Ms. Datillo has approximately 90 hours of college credits "rooted in psychology and public speaking" (*see* Exh. G to Plaintiffs' motion), she does not hold a college degree, has never had any formal training in the area of employment law, finance or

---

[2]Although the County states that "Plaintiffs' counsel misunderstood the purpose of Defendant's expert and the task which Defendant's expert was requested to perform," the County never clarifies what purpose or task the defendant's expert is serving.

accounting (*see* Deposition at pp. 12-13, 15-17, 19), is not a certified paralegal (*see* Deposition at pp. 16-17), and has no working familiarity with the FLSA (*see* Deposition at pp. 19-20).

Defendant responds that Ms. Datillo is "the only person involved in the case who has personally reviewed all time records for all Plaintiffs and done calculations based on her own ability and knowledge" (*see* Defendant's Response at p. 4), but defendant never offers an explanation as to what skills, education and experience qualify Ms. Datillo to perform these functions.  Without relevant scientific, technical, or other specialized knowledge, Ms. Datillo cannot qualify as an expert witness under Rule 702.[3]

### III.     The Motions for Summary Judgment

#### A.     *Summary Judgment Standard*

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "'secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting FED.R.CIV.P. 1).  A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  Summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, as well as any affidavits, "show that there is no genuine issue as to any material fact...."  *Id.* "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Although the material submitted by the parties in

---

[3]Defendant has not offered Ms. Datillo as a lay witness under Rule 602 or 701.  The determination that Ms. Datillo does not qualify as an expert under Rule 702 is not intended to address the admissibility of her testimony under Rule 602 or 701.

support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United States,* 590 F.2d 884, 8887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, *supra* at 325. In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id*. at 322. The non-moving party must present more than a mere scintilla of evidence in order to overcome a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511 (1986) ("[B]efore the evidence is left to the jury, there is a preliminary question for the judge...whether there is any upon which a jury could properly proceed to find a verdict for the party producing it") *See also Hom v. Squire*, 81 F.3d 969, 973 (10th Cir. 1996) (citing *Anderson*, *supra* for the proposition, "the non-moving party must present more than a mere scintilla of evidence").

### B.    *Background*

Plaintiffs allege in Count I of their amended complaint that the County violated the Fair Labor Standards Act ("FLSA") by: (1) changing the work period on various occasions in violation of the FLSA's § 207(k); and (2) failing to compensate the plaintiff-deputies for the time they were on-call, and time they spent "qualifying" at the shooting range and maintaining their County vehicles. In Count III, plaintiffs seek an injunction to prevent the defendant from retaliating against them for exercising their rights under the FLSA. Defendant's motion for summary judgment never specifically addresses plaintiffs' Count III.

In the Memorandum Opinion and Order entered May 26, 1998, I granted the County's

motion for summary judgment with respect to plaintiffs' claim that they were not compensated for time spent maintaining official vehicles and qualifying at the shooting range. Hence, the only remaining issues are whether the County violated § 207(k) of the FLSA and whether the deputies should have been compensated for the time they were on-call.

 *C. Analysis*

  **(1) The § 207k exemption**

§ 207(a) of the FLSA states:

> **(a) Employees engaged in interstate commerce; additional applicability to employees pursuant to subsequent amendatory provisions**
>  (1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C, § 207(a)(1).

Although the County could have conformed its maximum hour and overtime policies to § 207(a)(1), the County chose to adopt an alternative scheme for compensation of law enforcement officers under § 207(k). § 207(k) states:

> No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities or any employee in law enforcement activities (including security personnel in correctional institutions) if –
> (1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975; or
> (2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the

>aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if lower, the number of hours referred to in clause (B) of paragraph (1)) bears to 28 days, compensation at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C, § 207(k).  "A public sector employer bears the burden of establishing that it qualifies for a § 207(k) exemption." *Spradling v. City of Tulsa,* 95 F.3d 1492, 1504 (10th Cir. 1996) (citations omitted).  "[A] public employer may establish a 7(k) work period even without making a public declaration, as long as its employees <u>actually work</u> a regularly recurring cycle of between 7 and 28 days." *Id.* at 1505 (emphasis added).

It appears to be undisputed that the deputies consistently were paid by the County based on a fourteen day work period.  Deputies worked four shifts, ten hours in duration, followed by three days off.  Generally, each deputy was assigned to work eight ten-hour shifts during a fourteen-day period.  The deputies were paid overtime for hours worked in excess of eighty five (85) hours during a fourteen-day period.

The County's Personnel Policy, Revision VI, § 7.2 entitled "<u>OVERTIME PAY</u>" stated that overtime pay would be given to classified employees who worked authorized overtime.  Overtime is defined in the policy as hours worked over forty "actual work hours" in a normal work week.  Section 7.2 (A) set forth an exception to this rule which stated, "<u>Exceptions</u>.  Classified hourly law enforcement officers shall receive cash payment at a rate of 1-1/2 times regular pay for each hour of overtime over eighty-five (85) 'actual work hours' in a normal two week pay period." *Revision VI § 7.2(A), p. 23, Exhibit 3 to Plaintiff's Response.*  Revision IX of the County's personnel policies, which became effective June 28, 1997, included a section on overtime pay (§ 8.3), but included no sub-section listing exceptions to the general overtime

policy. *See Revision IX § 8.3, p. 23*, *Exhibit 4 to Plaintiffs' Response.* Instead, the following sentence was added to § 8.3: "A nonexempt Sheriff's Deputy or Detention Officer shift employee shall be paid overtime according to FLSA regulations." There is no evidence that the policy governing overtime compensation actually changed in practice after Revision IX was adopted.

Here, it seems undisputed that the deputies "actually worked" a regularly recurring cycle of fourteen days and were compensated for hours worked over 85 hours during that fourteen-day period. Plaintiffs have presented insufficient evidence disputing this conclusion.[4] Under *Spradling*, this appears to be acceptable under § 207(k). 95 F.3d at 1505. Therefore, summary judgment will be granted on this portion of Count I.

### (2) Failure to compensate for time while on-call

#### (a) Legal Standard Regarding Compensation for On-call Time

"[T]o determine whether on-call time is compensable requires consideration of the agreement between the parties, the nature and extent of the restrictions, the relationship between the services rendered and the on-call time and all surrounding circumstances." *Renfro v. City of Emporia Kansas*, 948 F.2d 1529, 1537 (10th Cir. 1991), *cert. denied*, 503 U.S. 915 (1992) (quoting *Boehm v. Kansas City power & Light Company*, 868 F.2d 1182, 1185 (10th Cir. 1989). "The test to determine whether an employee's on call time constitutes working time is whether

---

[4]Plaintiffs' only evidence supporting the proposition that the County changed the work period in violation of § 207(k) is the testimony of Henry Crocker who stated in a conclusory fashion, "I mean, I think they've changed [the policy regarding overtime compensation] like three times since I've worked with the sheriff's department." *See Deposition of H. Crocker* at pp. 11-12, Exhibit 1 to Plaintiffs' Cross-Motion for Summary Judgment. This "scintilla of evidence," which does not provide time frames, and does not controvert the conclusion that the deputies "actually worked" a regularly recurring cycle of 14 days and were compensated for hours worked over 85 hours during the fourteen-day period is insufficient to overcome summary judgment on this claim.

the time is spent predominantly for the employer's benefit or for the employee's." *Andrews v. Town of Skiatook*, 123 F.3d 1327, 1330 (10th Cir. 1997).

### (b)    Background

All County deputies were subject to a "call-back" policy. Deputies working during the night shift, which lasted from 5:00 p.m. to 3:00 a.m., were on "call-back" between 3:00 a.m. and 5:00 a.m. Deputies working during the day shift, which lasted from 7:00 a.m. to 5:00 p.m., were subject to call back between 5:00 a.m. and 7:00 a.m. There were no deputies assigned to work from 3:00 a.m. until 7:00 a.m. Thus, for those four hours, all emergency calls were handled by the deputies who were on-call. The deputies were on call every day that they worked, which meant they were subject to eight call back periods of duty in each fourteen-day work period.

Neither party presented evidence regarding when this call-back policy went into effect and/or whether it was in writing.[5]

The County asserts that while the deputies were on-call, they were not required to stay on the premises. The County did not provide the deputies with pagers or cellular phones, but the County claims that the deputies could leave any phone number – including their personal cell phone numbers if they so desired – with the dispatcher provided that they could be reached at that designated number. The County also states, and it is not disputed, that when the deputies on call were called in, they were required to respond in a "reasonable" amount of time, in uniform, and in their assigned police unit. Defendant states that the deputies were free to pursue other activities while not on active duty, and in fact, many of the deputies had outside employment, attended

---

[5]On January 1, 1998, a new sheriff issued a new written on-call policy which placed an officer on duty twenty four hours a day. In addition, the new written policy made participation in the four-hour on-call schedule voluntary.

school, and/or had their own businesses.  The defendant did not present evidence that the deputies engaged in these activities during their assigned on-call hours, however.

Certain plaintiffs testified during their depositions that they were effectively required to remain at home while they were on call.  The deputies claim that in practice they were given five to ten minutes to arrive at the station, and that their personal activities were severely limited because of the requirement that they respond quickly, in uniform, in their units.  They were not permitted to use their police units for personal activities or to wear their uniforms while not on active duty.  The deputies were not permitted to consume alcohol, were required to remain in the County, and had to be available to respond in a reasonable time.

There is conflicting testimony about the percentage of time the deputies were actually called back during the call back periods.  The County Sheriff's Office Dispatcher, Felicia Serna, for example, testified in her deposition that the average number of times a deputy would be called out during a call back period was once per day, although the number fluctuated greatly.  The expert for the defendant – who is now disqualified – stated in an affidavit (*see Exhibit F to Defendant's motion*) that plaintiffs were called back to duty while on call less than 4% of the time, per deputy.   Also, apparently defendant's expert had difficulty determining the actual number and frequency of call backs because certain "dispatch codes" used for employee identification changed and calculations could not be done from the dispatch records.  It is unclear what information the defendant's expert relied upon to arrive at the 4% figure.

   *(c)*  *Analysis*

Plaintiffs state that the Tenth Circuit case which factually fits this case best is *Renfro v. City of Emporia Kansas*, 948 F.2d 1529 (10th Cir. 1991), *cert. denied*, 503 U.S. 915 (1992).  In

that case thirty-three firefighters from two different stations filed suit alleging violations of the FLSA.  The firefighters were subject to twenty-four hour call-back periods and on average were called back three to five times per day.[6]  The Tenth Circuit affirmed the district court's conclusion that although the firefighters were not required to remain on the station house premises, the on-call conditions were such that the firefighters' personal pursuits were restricted and thus the hours were compensable.  More specifically, the district court found that in addition to the frequency of the call-backs, the firefighters were required to carry pagers and to return to the station house within twenty minutes or they would be subject to discipline.  They were paid overtime only when they were actually called back to duty, and it was difficult, if not impossible for firefighters to work in other employment while on-call, or to use their on-call time for personal pursuits.   The court found that the on-call duty was time spent working for the City in excess of the hourly levels set forth in FLSA and therefore was compensable under the FLSA. The Tenth Circuit affirmed the district court's award of compensatory and liquidated damages.

In this case, genuine issues of material fact preclude summary judgment on the issue of whether the deputies in this case were entitled to compensation for the hours which they spent on-call.  The central issue the fact-finder must resolve is whether the time the deputies spent on-call was predominantly for the employer's benefit, or primarily for the employee's benefit.  There is conflicting testimony or an absence of evidence on many sub-issues contained within this general proposition, including, for example: (1) whether the County required that the deputies remain at

---

[6]The number of call backs ranged from zero to thirteen calls during an on-call period.  The opinion in *Renfro* is unclear as to whether that average number applied to each firefighter or to the group of fire-fighters which were on call any given day.  Five firefighters were normally on the call-back list at one station and three at the other station.

11

home while on call; (2) the number of times, on average, the deputies were called back to active duty during a call-back period; (3) whether the deputies were able to pursue personal interests during their on-call time; and (4) the average amount of time the deputies were given in practice to respond (in their uniforms and in their vehicles) to a call.

IT IS THEREFORE ORDERED THAT:

(1) Plaintiffs' "Motion to Exceed Page Limitation" (Doc. No. 76) is GRANTED;

(2) Plaintiffs' "Motion to Strike Affidavit and Disqualify Witness to Testify as an Expert" (Doc. No. 83) is GRANTED;

(3) Plaintiffs' cross-motion for summary judgment on Counts I & III is DENIED; and

(4) Defendant's motion for summary judgment on Counts I & III is granted only to the extent that summary judgment will be entered on plaintiffs' claim in Count I that defendant violated § 207(k) of the Fair Labor Standards Act.

_____
UNITED STATES DISTRICT JUDGE